IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAVISTOCK RESTAURANT GROUP, LLC, | Case No. 20-cv-04364 |
| Plaintiff, | Judge John F. Kness |
| v. | |
| ZURICH AMERICAN INSURANCE COMPANY, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

This case presents an odd circumstance: neither party wants to proceed in this Court. Having first removed this case from Illinois state court, Defendant Zurich American Insurance Co. now moves to transfer it to the United States District Court for the Middle District of Florida. Plaintiff Tavistock Restaurant Group, however, wants this case back where it started and seeks a remand to state court. As explained below, after due consideration of the parties' arguments, the Court finds that this case should be transferred to the Middle District of Florida. Although removal was permitted and venue is proper, the interests of party and judicial efficiency are best served by a transfer. Accordingly, Tavistock's motion to remand is denied, and Zurich's motion to transfer is granted.

## I.    BACKGROUND

This case concerns an insurance coverage dispute between Tavistock—a limited liability company registered in Florida and managed by Tavistock Corporation. Tavistock is a Florida corporation with its principal place of business in Florida—and its insurer, Zurich, a New York corporation with its principal place of business in Schaumburg, Illinois. (Notice of Removal, Dkt. 1 ¶¶ 7-10.)

Tavistock owns and operates a network of nearly 80 restaurants throughout the United States, including in Illinois. (Complaint ("Compl."), Dkt. 1-1 ¶¶ 2-3.) At the onset of the COVID-19 pandemic in March 2020, Tavistock was forced to suspend its dine-in operations, leading to "significant losses." (*Id*. ¶ 72.) At the time of the shutdown, Tavistock held a commercial insurance policy (the "Policy") with Zurich. (*Id*. ¶ 83.) Tavistock submitted an insurance claim for its business losses to Zurich, but Zurich denied the request. (*Id*. ¶¶ 104-105.)

On July 21, 2020, Zurich filed a declaratory judgment action against Tavistock in the U.S. District Court for the Middle District of Florida (the "Florida Action"), seeking to determine the parties' rights and obligations under the Policy. *See generally* Order, Dkt. 54, *Zurich Am. Ins. Co. v. Tavistock Rests. Grp., LLC*, Case No. 6:20-cv-1295-PGB-EJK, (M.D. Fla. Mar. 4, 2021) ("Fla. Order"). Just two days later, on July 23, 2021, Tavistock filed a nearly identical declaratory judgment action against Zurich in the Circuit Court of Cook County, Illinois. (Compl., Dkt. 1-1.) But before Zurich was served with the complaint, it removed the case to this Court. (Notice of Removal, Dkt. 1.)

2

On August 3, 2020, Tavistock filed a motion to remand this case to the Circuit Court of Cook County. (Dkt. 12.) Shortly thereafter, Zurich moved to transfer the action to the Middle District of Florida under 28 U.S.C. § 1404(a). (Dkt. 15.) Meanwhile, in Florida, Tavistock filed a motion to transfer the Florida Action to this District, which Judge Byron denied on March 4, 2021. (*See* Fla. Order at 18.)

The Court is now faced with a quizzical situation: both parties go to great lengths to establish that the *other party's* home forum is more convenient and appropriate. Florida-based Tavistock would prefer that this case be heard in an Illinois state court, and Illinois-based Zurich would prefer that it be heard in a Florida federal court. As explained more fully below, because Zurich's "snap removal" of this case from the Illinois court to this Court was proper, Tavistock's motion to remand is denied. And although Zurich has not met its burden to show the Middle District of Florida is a "clearly more convenient" forum, *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220-21 (7th Cir. 1986), the Court, to conserve resources, exercises its discretion to transfer this action to the Middle District of Florida.

## II.    MOTION TO REMAND

### A.    "Snap" Removal

Removal is governed by 28 U.S.C. § 1441, which provides, in pertinent part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district . . . embracing the place where such action is pending." 28 U.S.C. § 1441(a). Zurich's asserted basis for federal

jurisdiction in this case is diversity jurisdiction under 28 U.S.C. § 1332, which states that district courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of a State and citizens or subjects of a foreign state[.]" 28 U.S.C. § 1332(a)(2). In this case, there is no dispute as to the statute's diversity or amount-in-controversy requirements.

There are, however, exceptions that apply to preclude removal under Section 1441. A defendant seeking to remove a case to federal court based on diversity of citizenship "must also clear the additional hurdle of . . . the forum defendant rule." *Morris v. Nuzzo*, 718 F.3d 660, 665 (7th Cir. 2013) (cleaned up). The forum defendant rule provides:

> A civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(b)(2). Tavistock argues Section 1441(b)(2) should apply because Illinois is Zurich's home forum. (Dkt. 12 at 8-9.)

Zurich responds that that the forum-defendant rule should not apply because 28 U.S.C. § 1441(b)(2), by its terms, applies only to defendants that are "properly joined and served." (Dkt. 18 at 13.) Because Zurich was not yet served, it contends that the forum-defendant rule does not apply in this case. (*Id*.) Tavistock replies that, regardless of what the plain text of the rule says, denying remand would defeat the fundamental purpose of the forum defendant rule: to prevent removal when a plaintiff sues in the defendant's home forum. (Dkt. 22 at 10.)

Courts in the Northern District of Illinois are divided on this issue. Some courts (the "plain text" or "plain meaning" school) interpret the statute to mean exactly what it says—that a defendant must be properly joined and served for the forum defendant rule to bar removal. *See West Bend Mut. Ins. Co. v. MSPPR, LLC*, 2021 WL 463259, at *2 (N.D. Ill. Feb. 9, 2021); *Grandinetti v. Uber Techs., Inc.*, 2020 WL 4437806, at *7 (N.D. Ill. Aug. 1, 2020); *D.C. v. Abbott Labs, Inc.*, 323 F. Supp. 3d 991, 994 (N.D. Ill. 2018); *Graff v. Leslie Hindman Auctioneers, Inc.*, 299 F. Supp. 3d 928, 934 (N.D. Ill. 2017); *Selective Ins. Co. of S. Carolina v. Target Corp.*, 2013 WL 12205696, at *1 (N.D. Ill. Dec. 13, 2013); *Maple Leaf Bakery v. Raychem Corp.*, 1999 WL 1101326, at *1 (N.D. Ill. Nov. 29, 1999). Others (the "purpose-based" school) find this approach overly formalistic and hold that the purpose of the statute—to bar removal when the defendant is at home—is defeated by allowing an at home defendant to remove. *See Kern v. Krso*, 2020 WL 3960509, at *4 (N.D. Ill. Jul. 13, 2020); *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, 67 F. Supp. 3d 952, 962 (N.D. Ill. 2014); *Grimard v. Montreal, Maine & Atl. Ry., Inc.*, 2013 WL 4777849, at *2 (N.D. Ill. Sept. 5, 2013); *Vivas v. Boeing Co.*, 486 F. Supp. 2d 726, 734-35 (N.D. Ill. 2007). The Seventh Circuit has not resolved the split. See *Grandinetti*, 2020 WL 4437806, at *7 (citing *D.C.*, 323 F. Supp. 3d at 993).

Courts outside of the Seventh Circuit are split on the issue, with the more recent cases adopting the plain-text approach. *Cf. Texas Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.,  Texas Brine*, 955 F.3d 482, 486-88 (5th Cir. 2020); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 707 (2d Cir. 2019) (" . . . the result here—that a

home-state defendant may in limited circumstances remove actions filed in state court on the basis of diversity of citizenship—is authorized by the text of Section 1441(b)(2) and is neither absurd nor fundamentally unfair. We therefore have no reason to depart from the statute's express language. . . ."); *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 153-54 (3d Cir. 2018) (similar) *with Pecherski v. Gen. Motors Corp.*, 636 F.2d 1156, 1160 (8th Cir. 1981) ("Despite the 'joined and served' provision of section 1441(b), the prevailing view is that the mere failure to serve a defendant who would defeat diversity jurisdiction does not permit a court to ignore that defendant in determining the propriety of removal"); *Preaseau v. Prudential Ins. Co. of Am.*, 591 F.2d 74, 78 (9th Cir. 1979); *see also Pullman Co. v. Jenkins*, 305 U.S. 534, 541 (1939) ("the fact that the resident defendant has not been served with process does not justify removal by the non-resident defendant").

Although there is merit to both sides of the debate, the plain-text approach, which aligns better with accepted principles of statutory construction, is more fundamentally sound. When "interpreting statutes, first and foremost, we give words their plain meaning unless doing so would [1] frustrate the overall purpose of the statutory scheme, [2] lead to absurd results, or [3] contravene clearly expressed legislative intent." *United States v. Vallery*, 437 F.3d 626, 630 (7th Cir. 2006); *Jefferson v. United States*, 546 F.3d 477, 483 (7th Cir. 2008) (same); *see also Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010) (courts "must enforce plain and unambiguous statutory language"). Section 1441(b)(2) is plain and unambiguous: only a "properly joined and served" defendant is a forum defendant barred from

6

removing an action. 28 U.S.C. § 1441(b)(2). Zurich was not served in the state court action, and it was therefore entitled to remove unless one of the three exceptions identified in *Vallery* applies.

None of those exceptions applies here. First, allowing snap removal does not frustrate the overall purpose of the statutory scheme. The purpose of diversity jurisdiction is to "prevent local prejudice." *Betar v. De Havilland Aircraft of Canada, Ltd.*, 603 F.2d 30, 35 (7th Cir. 1979); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 85 (2010) (the purpose of diversity jurisdiction is to protect defendants who "might otherwise suffer from local prejudice"). Allowing snap removal does not encourage local prejudice. Just the opposite: it allows more cases to be removed from local courts. To be sure, a snap removal might frustrate a plaintiff's choice of forum. But because the concept of diversity jurisdiction itself limits plaintiffs' ability to choose the forum when the parties are diverse, that objection is of marginal effect. What matters here is the purpose of this statutory scheme, and where the goal is to prevent local prejudice, a rule permitting removal unless the terms of the forum defendant rule are strictly met does not frustrate that purpose.

Second, allowing snap removal does not lead to absurd results. In statutory interpretation, an "absurdity is not mere oddity. The absurdity bar is high, as it should be. The result must be preposterous, one that no reasonable person could intend." *Texas Brine*, 955 F.3d at 486 (quotation omitted). Snap removals narrow the scope of the forum defendant rule and defeat its applications in many cases, but they are confined to scenarios where the defendant has not been served. Accordingly, the

forum defendant rule is not vitiated entirely. And while it may be said that snap removals allow many defendants to remove when there is little or no risk of local prejudice, it is not absurd to narrow the application of a rule so that it does not encompass every scenario where it could conceivably be useful. *See Encompass Ins.*, 902 F.3d at 153–54 (allowing snap removals "may be peculiar" because it allows an at-home defendant to remove "however, the outcome is not so outlandish as to constitute an absurd or bizarre result").

Moreover, the absurdity of allowing snap removals must be judged relative to the absurdity of ignoring or avoiding what the text plainly says. To forbid snap removals would require a court to disregard the words "properly joined and served" in some cases but not others. To determine which cases require the defendant to be "properly joined and served" and which do not, courts would need to craft new, judicially invented requirements for when the words "properly joined and served" apply and when they do not. These requirements would necessarily contravene the statutory text in at least some cases by denying unserved defendants their statutory right of removal. A reasonable person could conclude that this outcome would be more absurd than simply allowing all unserved defendants to remove. *See Texas Brine*, F.3d at 486 (allowing snap removals is not absurd because "a reasonable person could intend the results of the plain language").

Third, allowing snap removals does not contravene express legislative intent. "Congress' inclusion of the phrase 'properly joined and served' addresses a specific problem—fraudulent joinder by a plaintiff—with a bright-line rule." *Encompass Ins.*,

902 F.3d at 153; *Vivas*, 486 F. Supp. 2d at 734 ("The purpose of the joined and served requirement is to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not even serve"). Snap removals do not contravene this intent: on the contrary, keeping the bright line rule as a bright line, with its requirement of proper service in addition to proper joinder, decreases the likelihood that cases might be improperly remanded due to fraudulent joinder.

In any event, the statute says what it says. As at least one other judge in this district has observed, it is within Congress's purview to determine, in its discretion, whether to credit the view that the "properly joined and served" requirement renders the forum-defendant rule too narrow. *See D.C.*, 323 F. Supp. 3d at 996.

## B. Abstention

Tavistock next argues that the Court should abstain from hearing this case under the *Wilton/Brillhart* doctrine, which establishes that a district court may decline to exercise jurisdiction over suits brought under the Declaratory Judgment Act when the matter "can better be settled" in state court. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 279 (1995). Under the doctrine, abstention may be appropriate where "solely declaratory relief is sought and parallel state proceedings are ongoing." *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010). Abstention under *Wilton/Brillhart* "is an inherently discretionary call for the district court, 'because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness

of the case for resolution, are peculiarly within its grasp.' " *Arnold v. KJD Real Estate, LLC*, 752 F.3d 700, 707 (7th Cir. 2014) (cleaned up) (quoting *Wilton*, 515 U.S. at 289).

Although a parallel state proceeding is neither necessary nor sufficient for a court to abstain under *Wilton/Brillhart*, *see Med. Assur. Co. v. Hellman*, 610 F.3d 371, 379 (7th Cir. 2010), the doctrine is most appropriately invoked where "solely declaratory relief is sought and parallel state proceedings are ongoing." *See Envision Healthcare*, 604 F.3d at 986. *See also Cincinnati Ins. Co. v. Silvestri Paving Co.*, No. 10 C 07971, 2011 WL 4686437, at *3 (N.D. Ill. Oct. 4, 2011) (abstention under *Wilton/Brillhart* inappropriate in part because there was "no parallel pending litigation in state court"). Such is the circumstance here: because Tavistock seeks only declaratory relief, and there is no parallel action pending in any state court, this case is not one where the *Wilton/Brillhart* doctrine is particularly apt. And as discussed above, although Zurich filed a mirror-image lawsuit in the Middle District of Florida, Tavistock cites no authority holding that *Wilton/Brillhart* abstention is appropriate where there is an ongoing parallel *federal* proceeding. *See Meras Eng'g, Inc. v. CH2O, Inc.*, No. C-11-0389 EMC, 2013 WL 146341, at *6 (N.D. Cal. Jan. 14, 2013) (justifications for *Wilton/Brillhart* abstention absent where parallel proceeding is in federal court instead of state court).

It is also not clear, despite Tavistock's contrary argument, that this case involves any unsettled, insuperable, or "undecided state law issues" that would lean in favor of abstention. (Dkt. 12 at 7.) *See Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 361 (7th Cir. 2017) ("[I]nsurance policies are generally

subject to the same rules of construction that apply to other types of contracts")
(citation omitted). This case presents unusual facts related to the ongoing COVID-19
pandemic, to be sure, but it is not obvious that ordinary principles of contract
interpretation would not apply to the Parties' dispute. Accordingly, the Court declines
to order a remand under *Wilton/Brillhart*. Tavistock's motion for remand, therefore,
is denied.

## III.    MOTION TO TRANSFER

Having determined that Zurich's removal of this action was proper, the Court
next turns to Zurich's motion to transfer the case to the United States District Court
for the Middle District of Florida. (Dkt. 15.) For the reasons stated below, Zurich's
motion to transfer is granted.

### A.    Legal Standard

For the convenience of parties and witnesses, in the "interest of justice, a
district court may transfer any civil action to any other district or division where it
might have been brought or to any district or division to which all parties have
consented." 28 U.S.C. § 1404(a). This provision codifies the doctrine of *forum non
conveniens*, which is, "essentially*,* a supervening venue provision, permitting
displacement of the ordinary rules of venue when, in light of certain conditions, the
trial court thinks that jurisdiction ought to be declined." *Sinochem Int'l Co. v.
Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007).

As many courts have explained, venue "is not a contest—the venue statute
doesn't require the Northern District to be the *best* forum." *Nw. 1 Trucking Inc. v.*

*Haro*, No. 19-cv-397, 2020 WL 1974379, at *15 (N.D. Ill. Apr. 24, 2020) (citing *Brito v. Urbina*, 2018 WL 3672743, at *4 (N.D. Ill. 2018); *Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 952–53 (N.D. Ill. 2017)). Instead, the party "seeking transfer 'has the burden of establishing, by reference to particular circumstances, that the transferee forum is *clearly* more convenient.' " *Green v. Meeks*, No. 19 C 7089, 2020 WL 2513096, at *1 (N.D. Ill. May 15, 2020) (quoting *Coffey*, 796 F.2d at 220-21) (emphasis added).

To determine whether the movant has met its burden, courts consider both private- and public-interest factors. *See Am. Dredging Co. v. Miller*, 510 U.S. 443, 447 (1994); *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257 (1981). The private interest factors include: "(1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties, and (5) the convenience of the witnesses." *Swift v. Medicate Pharmacy, Inc.*, No. 10 C 1874, 2010 WL 3548006, at *3 (N.D. Ill. Sept. 3, 2010) (quoting *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 913-914 (N.D. Ill. 2009)). The public interest factors include: "(1) the court's own docket congestion; (2) the preference for having a forum apply law with which it is familiar; (3) the local interest in resolving the controversy; and (4) the unfairness of burdening citizens in an unrelated forum with jury duty." *Chukwu v. Air France*, 218 F. Supp. 2d 979, 987 (N.D. Ill. 2002) (citing *Piper Aircraft*, 454 U.S. at n. 6). The relative weight of the factors depends on the circumstances of each case, and district courts enjoy "substantial flexibility" in considering the relative importance of each factor. *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990).

B.     **Private-Interest Factors**

1.     *Plaintiff's choice of forum*

The first private interest factor, the plaintiff's choice of forum, is neutral. Tavistock is correct that a plaintiff's choice of forum is ordinarily afforded great deference. (Dkt. 19 at 6.) *See Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 643 (7th Cir. 2003) ("There is a strong presumption in favor of the plaintiff's choice of forum"). Tavistock is the master of its case, and it chose to file suit in Illinois. But the Court must also factor into its analysis that Zurich has filed a nearly identical declaratory judgment action against Tavistock in the Middle District of Florida. When there are two declaratory judgment suits in two different venues, each concerning the same set of facts, "this factor loses its significance entirely: each case has a plaintiff, and one of them will necessarily be disturbed." *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 979 (7th Cir. 2010); *see also Bull v. Ill. Union Ins. Co.*, No. 16 C 11446, 2017 WL 3234374, at *4 (N.D. Ill. July 31, 2017) ("because both [plaintiff] and [defendant] are plaintiffs in their respective suits, no presumptive weight will be afforded to plaintiff's choice of forum in this case"). This factor therefore does not lean for or against keeping this action in the Northern District of Illinois.

2.     *Situs of material events*

Next, the Court must evaluate the location of material events and the relationship of those events to this District. *See Rsch. Automation*, 626 F.3d at 978. Zurich argues that, in insurance coverage actions, the situs of material events is where the policy in question "has been solicited, negotiated, delivered, [or] executed."

(Dkt. 15-1 at 6.) Zurich points out that the Policy was brokered by an entity in Tampa, Florida and delivered to that Florida broker; Florida was the "hub" of Tavistock's communications with Zurich; Tavistock received its invoices in Florida, submitted its claim for coverage through its Florida broker, and received communications regarding the claim in Florida. (*Id.* at 7.)

Tavistock does not argue that Illinois is the situs of material events, but makes a case for why the situs is *not* in Florida. (Dkt. 19 at 7.) Tavistock argues that its "operational hub for the restaurant group" is not in Florida (although it does not say where it is) and that its restaurants are scattered throughout the United States, including in California, Florida, Georgia, Illinois, Massachusetts, Nevada, Oklahoma, Tennessee, and Texas. (*Id.* at 8-9.) Although these facts demonstrate the reach of Tavistock's operations, they do not speak to the material events surrounding where the Policy was brokered and negotiated, and Tavistock does not dispute that the Policy was solicited, negotiated, brokered, delivered, and executed in Florida.

Tavistock also makes no attempt to argue that Illinois has any connection to the material events of this case. Even though Zurich is headquartered in Illinois, it is not clear that any of Zurich's employees in Illinois had any connection with the Policy. Accordingly, because it appears that the material events surrounding the Policy mostly occurred in Florida, the "situs of the material events" factor tips toward transfer. *Jaramillo*, 664 F. Supp. 2d at 913-14.

3.     *Relative ease of access to sources of proof*

Regarding the relative ease of access to sources of proof, Zurich acknowledges that this case "is not expected to be document intensive" and that electronically produced documents can be "accessed anywhere." (Dkt. 15-1 at 7.) But Tavistock argues that this factor weighs in favor of transfer because most of the evidence in this case is likely "housed" at Tavistock's headquarters in Florida. (Dkt. 15-1 at 7.) Tavistock, on the other hand, contends that a significant number of corporate records are stored at Zurich's corporate offices in Illinois. (Dkt. 19 at 11.)

Most documentary evidence today is produced electronically, especially when the case, as here, involves sophisticated entities. *See Qurio Holdings, Inc. v. DISH Network Corp.*, No. 14 C 7504, 2015 WL 536002, at *3 (N.D. Ill. Feb. 9, 2015) ("Although section 1404(a) was adopted in the 1940s, it does not require a court to pretend that lawsuits are litigated and tried as they were in that era . . . [A]s any experienced litigator or trial judge can attest, when records are produced in litigation nowadays, they are all (or virtually all) *produced* digitally"). Because neither party has identified with specificity any physical evidence that requires inspection or that is otherwise difficult to access remotely, this factor is neutral.

4.     *Convenience of the parties*

Next, the convenience of the parties favors neither side. Zurich maintains that the Middle District of Florida is "*more* convenient" for Tavistock than the Northern District of Illinois because Tavistock's principal place of business is in Florida. (Dkt. 15-1 at 8). But, as Tavistock points out, Zurich is headquartered in Chicago and

litigates here frequently. (Dkt. 19 at 11.) It thus appears that Illinois is a more convenient venue for Zurich and Florida is a more convenient venue for Tavistock. Accordingly, this factor is a wash.

### 5.   Convenience of the witnesses

Finally, considerations related to the convenience of witnesses are insufficient to compel a transfer. As an initial matter, because "it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily," the location of either party's employees is of little significance. *FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1311 (N.D. Ill. 1993); *see also Buehler v. S & G Enters. Inc.*, No. 09 C 1396, 2009 WL 1543664, at *5 (N.D. Ill. June 2, 2009).

The only non-party witness that either party has identified as a potential deponent is Tavistock's insurance broker in Florida. (Dkt. 15-1 at 9.) Zurich has not, however, identified the subject matter of this witness's testimony or how it would be relevant to the dispute. At this juncture, therefore, the potential that a peripheral witness of questionable value *may* be deposed does not weigh in favor of transfer. *See Tingstol Co. v. Rainbow Sales, Inc.*, 18 F. Supp. 2d 930, 933 (N.D. Ill. 1998) (when assessing convenience to witnesses, court "must look to the nature and quality of the witnesses' testimony with respect to the issues of the case").

### B.   Public-Interest Factors

The interests of justice—the second element of the Section 1404 inquiry—reflects a concern for the "efficient administration of the court system." *Rsch. Automation*, 626 F.3d at 978. This analysis requires a court to compare (1) docket

16

congestion and likely speed to trial, (2) each court's relative familiarity with the relevant law, and (3) the relationship of each community to the controversy. *Id*. The interest-of-justice inquiry carries greater weight than concern for the parties' private convenience. *Id*. ("The interests of justice may be determinative, warranting transfer or its denial even where the convenience of the parties or witnesses point toward the opposite result"). Here, the Court finds transfer to the Middle District of Florida would better serve the interests of justice, if only slightly.

1.     *Docket congestion*

First, Zurich argues that transfer will "permit the case to proceed to trial more quickly" because the median time from filing to both trial and disposition is shorter in the Middle District of Florida than it is in the Northern District of Illinois. (Dkt. 15-1 at 12.) The statistics Zurich relies on, however, were published in March 2020 before the onset of the COVID-19 public health crisis. The pandemic has affected nearly all aspects of contemporary life, and federal district courts have not been immune to this disruption. Nearly all courts around the country, both state and federal, are facing a severe backlog of triable cases, which has certainly skewed statistics regarding disposition of cases. Accordingly, the Court does not find pre-pandemic statistics regarding the disposition of cases to be helpful in its analysis. And, as Tavistock observes, insurance coverage disputes are often decided on summary judgment without the need to proceed to trial, *see Hartford Cas. Ins. Co. v. Constr. Builders in Motion, Inc.*, No. 11 C 7498, 2012 WL 645982, at *4 (N.D. Ill. Feb.

28, 2012), making a comparison of time-to-trial statistics unhelpful. This factor, therefore, weighs neither for nor against transfer to the Middle District of Florida.

### 2.    *Relative familiarity with applicable law*

The subject insurance policy does not include a choice-of-law provision. (Dkt. 19 at 7.) A federal court sitting in diversity must apply the choice-of-law rules of the jurisdiction in which it sits, which, in this case, is Illinois. *See Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1219 n. 6 (7th Cir. 1995). Illinois courts apply the most-significant-contacts approach in applying choice-of-law principles. *Gold v. Wolpert*, 876 F.2d 1327, 1330 (7th Cir. 1989). Contacts to be considered include "the place of contracting, negotiation, performance, location of the subject matter of the contract, and the domicile, residence, place of incorporation, and business of the parties." *Id.*

Zurich suggests that, following these choice-of-law principles, Florida law will "likely" apply to this case because (1) Tavistock is a Florida LLC with its principal place of business in Florida; (2) Tavistock's registered agent and managers are in Florida; (3) the Policy was negotiated by Tavistock's Florida broker; and (4) Tavistock's invoices were submitted via that Florida broker. (Dkt. 15-1 at 11; Dkt. 23 at 12 n. 7.) Tavistock offers no meaningful response to this contention. (*See* Dkt. 19 at 9-10.) Instead of offering its own application of Illinois's choice-of-law principles, Tavistock merely states, without any analysis or citation to authority, that Zurich's choice-of-law analysis is "deficient" and "legally incorrect." (*Id.* at 10.)  In the absence of any indication to the contrary, and applying Illinois's choice-of-law principles, the Court finds that Florida has more significant contacts to this dispute than does

Illinois, and that Florida law would most likely govern this action.[1] Because a federal court in Florida is more likely to be familiar with Florida law than this Court, this factor tips slightly in favor of transfer.

### 3.   Relationship of the communities to the litigation

Finally, because this is a dispute between an Illinois corporation and a Florida LLC, the Court finds that the people of the Middle District of Florida have no materially greater interest in resolving this controversy than the people of the Northern District of Illinois. Zurich suggests that Illinois's connection to this case is "limited and attenuated" (Dkt. 15-1 at 13), but Zurich is headquartered in the Northern District of Illinois. That must count for something. Given Zurich's domicile in this District, the facts of this case are not so unrelated to this forum that "calling Chicago-area citizens for jury duty on this case would be asking a lot." *Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417, 425 (7th Cir. 2009). As discussed above, the material events of this case are marginally more related to Florida than they are to Illinois, but without more evidence to the contrary, the Court cannot say that this case has such a strong relationship to either state such that this factor would tip the scales in either direction.

---

[1] The Court acknowledges that, in his order denying Tavistock's motion to transfer the Florida Action to this District, Judge Byron, applying Florida's *lex loci contractus* rules, held that Georgia law would most likely apply to the Parties' dispute. *See* Fla. Order at 12. But the facts upon which Judge Byron rested his decision (namely that the "last act" necessary to complete the Parties' insurance contract occurred in Georgia) are not part of the record in this case. Relying solely on the record before it, the Court cannot hold that Georgia law applies to the Parties' dispute.

## C.    Other Considerations

The language of 28 U.S.C. § 1404(a) permits a "flexible and individualized analysis" and allows district courts "to look beyond a narrow or rigid set of considerations in their determinations." *Rsch. Automation*, 626 F.3d at 978 (citing *Stewart Org, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Zurich suggests that the Court should factor into its analysis both (1) that Zurich filed the Florida Action first and (2) concerns surrounding conservation of resources. (Dkt. 15-1 at 10-11.) The Court addresses each of these arguments in turn.

### 1.    *Conservation of judicial resources*

As Zurich notes, the pending Florida Action involves the same parties, the same insurance policy, the same claims, and the same defenses. (Dkt. 15-1 at 9.) If the Court were to transfer this action to the Middle District of Florida, it would almost certainly be consolidated with the pending action there. The existence of related litigation in the proposed transferee forum "is a significant factor in favor of transfer" because such transfer "would prevent duplication of discovery, unnecessary expenses for the court and parties, and the waste of judicial resources." *Perry v. Cable News Network, Inc.*, No. 14 C 1194, 2014 WL 4214873, at *4 (N.D. Ill. Aug. 25, 2014); s*ee also Waller v. Burlington N. R. Co.*, 650 F. Supp. 988, 991 (N.D. Ill. 1987) ("As a general rule, cases should be transferred to districts where related actions are pending" because "consolidation of related actions will occur in the transferee district, thus promoting judicial and litigant economy"); *Conseco Life Ins. Co. v. Reliance Ins. Co.*, No. 99 C 5020, 2001 WL 1631873, at *4 (N.D. Ill. Dec. 14, 2001) ("The court

should not countenance the simultaneous litigation of essentially identical claims in two federal courts"); *Abbott Labs. v. Selfcare, Inc.*, No. 98 C 7102, 1999 WL 162805, at *2 (N.D. Ill. Mar. 15, 1999) (granting motion to transfer and holding that "[c]onsolidation not only conserves scarce judicial resources, but also reduces the resources ultimately expended by the litigants").

Conversely, to deny Zurich's motion to transfer and allow this suit to remain in the Northern District of Illinois would have a serious negative consequence: two mirror-image suits proceeding simultaneously in two different courts, with the resulting waste of resources to this Court, the assigned judge in the Middle District of Florida, and the Parties. *See Kreutzig v. Galley*, No. 15 C 448, 2015 WL 3631611, at *2 (N.D. Ill. June 10, 2015) (granting motion to transfer where allowing identical parallel declaratory judgment actions to proceed in different district would result in a "waste of judicial and private resources"). Because this action and the Florida Action are nearly identical, the Court finds that allowing this case to proceed in this forum would result in a significant waste of resources.

### 2.    *First to file*

Zurich argues that the fact that it filed the Florida Action before Tavistock filed this action "may additionally support transfer." (Dkt. 15-1 at 9.) The Seventh Circuit has "never laid down an inflexible rule that the prior filing controls." *Rsch. Automation*, 626 F.3d at 980 (quoting *Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1265 (7th Cir. 1977)); *see also Martin v. Graybar Elec. Co.*, 266 F.2d 202, 203 (7th Cir. 1959) (declining to promulgate "a judicial fiat that the prosecution of the

subsequent suit must or must not be enjoined as a matter of law"). A district court may nonetheless evaluate the order of filing as part of its Section 1404(a) analysis. *Rsch. Automation*, 626 F.3d at 982; *see also Hecker v. Petco Animal Supplies, Inc.*, No. 16 C 10857, 2017 WL 2461546, at *3 (N.D. Ill. June 7, 2017) ("the first-filed nature of a suit" should be considered "in light of the other considerations relevant under § 1404(a)").

Zurich filed the Florida Action on July 21, 2020 and Tavistock filed this action in Illinois state court on July 23, 2020. Although the so-called "first filed" rule certainly does not *mandate* transfer to the Middle District of Florida, *see Rsch. Automation*, 626 F.3d at 980, the order in which the lawsuits were filed is entitled to some weight. *See Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1008 (N.D. Ill. 2009) ("where deference to the first-filed action is consistent with considerations of judicial and litigant economy, and the just and effective disposition of disputes, the first to file rule provides courts seeking to avoid duplicative litigation with some guidance") (cleaned up); *see also Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (favoring first-filed action is appropriate where doing so constitutes "wise judicial administration"). In view of the considerable resources that would be conserved by transfer, the Court finds that, given the circumstances of this case, the first-filed rule leans in favor of transfer.

\*          \*          \*

In sum, any interest the public has in transferring this case to another district is slight, and the private interest factors tilt only marginally in favor of transfer.

*Rsch. Automation*, 626 F.3d at 980. But because allowing this case to remain in this district would result in a waste of resources for both the Court and the Parties, and with appropriate deference to the Florida Action as the first-filed suit, the Court exercises its discretion to transfer this case to the Middle District of Florida.

## V.     CONCLUSION

For the reasons stated above, Plaintiff's motion to remand (Dkt. 12) is DENIED. Defendant's motion to transfer (Dkt. 15) is GRANTED. The Clerk of Court is directed to transfer this case to the U.S. District Court for the Middle District of Florida.

SO ORDERED.

Date: April 26, 2021

JOHN F. KNESS
United States District Judge